# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| LYNNE COBB, individually and on behalf of others similarly situated, | : :  CIVIL ACTION FILE NO. |
| Plaintiff, | : : |
| v. | : **COMPLAINT – CLASS ACTION** : : |
| POSTMATES INC. | : **JURY TRIAL DEMANDED** : |
| Defendant. | : : : |

## Preliminary Statement

1. Plaintiff Lynne Cobb ("Plaintiff" or "Ms. Cobb") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of automated and prerecorded telephone calls, which, Congress found, were rightly regarded as in invasion of privacy. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. The Plaintiff alleges that Postmates Inc. ("Postmates" or "Defendant") made pre-recorded telemarketing calls to her and other putative class members without their consent.

3. The Plaintiff and putative class members never consented to receive these calls. Because automated dialing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff bring this action on behalf of a proposed nationwide class of other persons who received illegal robocalls from or on behalf of the Defendant.

4. A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff Lynne Cobb resides in this District.

6. Defendant Postmates Inc. is a corporation with its principal place of business in San Francisco, CA that offers food, beverage and grocery delivery services to consumers. *See* https://postmates.com/.

## Jurisdiction & Venue

7. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

8. The Court has personal jurisdiction over the Defendant because it engaged in telemarketing conduct into this District, as it did with the Plaintiff, either directly or via an agent. Postmates also provides services into this District.

9. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were made into this District.

## TCPA Background

10. "If robocalls were a disease, they would be an epidemic." *Rage Against Robocalls*, Consumer Reports (July 28, 2015, 6:00 AM), ttps://www.consumerreports.org/cro/magazine/ 2015/07/rage-against-robocalls/index.htm.  "Robocalls" are the number one consumer complaint in America today.

11. "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991, Notice of Proposed Rulemaking*, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016), *available at* https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-

ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

12. Robocalls have drastically increased since that time.

13. According to a respected robocall watch site, robocalls have increased by a whopping 494% in a four year span: from 8.9 billion in the last three quarters of 2015 to 43 billion in the same nine months of 2019. *See* YouMail Robocall Index, Historical Robocalls by Time, available at https://robocallindex.com/history/time/ (accessed March 5, 2020).

14. Of the 58.5 billion robocalls made in 2019, YouMail reports that over half of these calls—56%—were scam calls, spoofed calls, or telemarketing calls. *Id.*

15. The TCPA makes it unlawful to make any pre-recorded telemarketing calls to the residential telephone line of an individual. *See* 47 U.S.C. § 227(b)(1)(B).

16. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(B).  *See* 47 U.S.C. § 227(b)(3).

17. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found,

automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

18. While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

19. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

**Factual Allegations**

20. Postmates uses telemarketing to attract new drive for its home delivery business.

21. One of the telemarketing strategies used by Defendant involves the use of prerecorded messages.

22. While such automated technology may save time and money for Defendant's telemarketing efforts, it violates the privacy rights of the Plaintiff and putative class.

Calls to The Plaintiff

23. Plaintiff Cobb is a "person" as defined by 47 U.S.C. § 153(39).

24. Ms. Cobb's telephone number, (XXX) XXX-5824, is a residential telephone number.

25. Ms. Cobb's telephone number is not associated with a business.

26. Ms. Cobb's telephone number is for her personal use.

27. Ms. Cobb was called by the Defendant on that telephone number on several different dates, including: January 6 (twice), 7, 14, 22, 24, 28, 29, 30, and 31, 2020.

28. In fact, on January 31, 2020 Ms. Cobb received three calls from the Defendant.

29. Ms. Cobb was also contacted multiple times in February, including: February 3 and 5, 2020.

30. In fact, Ms. Cobb received a call on February 17, 2020 three times even though she had retained a lawyer who sent a letter on February 11, 2020 to the Defendant regarding the calls she had received.

31. The purpose of the calls was to recruit drivers to work for Postmates.

32. The calls all began with the same pre-recorded messages inquiring as to the Plaintiff's interest in working for Postmates.

33. The calls all explicitly used the Posmates trade name and said the calls were being made by Postmates.

34. Plaintiff did not consent to receive these calls and had never expressed an interest in employment as a driver for Postmates.

35. Prior to these calls, the Plaintiff had never heard of Postmates.

36. On multiple dates the Plaintiff informed the Defendant she was not interested in receiving their solicitation calls.

37. These dates include: January 6, 7, 11, 14 and February 11, 2020.

38. On January 14, 2020, Postmates informed Ms. Cobb that Postmates was placing her residential number on their internal do not call list.

39. However, the calls continued as identified above.

## Class Action Allegations

40.     As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a Class of all other persons or entities similarly situated throughout the United States.

41.     The class of persons Plaintiff proposes to represent is tentatively defined as:

> All persons within the United States to whom (a) Postmates, and/or a third party acting on its behalf, made one or more non-emergency telephone calls; (b) promoting Postmates products or services; (c) to a residential or cellular telephone number; (d) using an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

42.     Excluded from the Class are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

43.     The Class as defined above is identifiable through phone records and phone number databases.

44.     The potential Class members number at least in the thousands. Individual joinder of these persons is impracticable.

45.     The Plaintiff is a member of the Class.

46. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

   a. Whether Defendant violated the TCPA by using pre-recorded calls to contact putative Class members;

   b. Whether Defendant placed calls without obtaining the recipients' prior express consent for the call; and

   c. Whether the Plaintiff and the Class members are entitled to statutory damages because of Defendant's actions.

47. The Plaintiff's claims are typical of the claims of the members of the Class.

48. The Plaintiff is an adequate representatives of the Class because her interests do not conflict with the interests of the Class, she will fairly and adequately protect the interests of the Class, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

49. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or Defendant's agents.

50.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## Legal Claims

### Count One:
### Violation of the TCPA, 47 U.S.C. § 227(b)(1)(B)

51.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

52.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the residential telephone number of Plaintiff and members of the proposed class using an artificial or prerecorded voice in an attempt to sell goods or services.

53.     As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violation of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the class presumptively are entitled to an award of $500, pursuant to 47 U.S.C. § 227(b)(3)(B).

54. If the Defendant's conduct is found to be knowing or willful, Plaintiff and members of the class are entitled to an award of up to treble damages.

55. Plaintiff and members of the class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any residential telephone numbers for marketing purposes using an artificial or prerecorded voice in the future.

## Relief Sought

WHEREFORE, for herself and all class members, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendant from calling cellular telephone numbers using a pre-recorded voice, absent an emergency circumstance;

C. An award of damages to Plaintiff and the Class, as allowed by law;

D. An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

E. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: March 9, 2020       PLAINTIFF, individually and
on behalf of others similarly situated,

By:

*/s/ Steven H. Koval*
Steven H. Koval
Georgia Bar No. 428905
3575 Piedmont Road
Building 15, Suite 120
Atlanta, GA  30305
Telephone:  (404) 513-6651
Facsimile: (404) 549-4654
shkoval@aol.com

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1.C & 7.1.D

Pursuant to L.R. 7.1.D, I certify that this document has been prepared with 14-point, Times New Roman font, approved by the Court in L.R. 5.1.C.

*/s/ Steven H. Koval*
Steven H. Koval